UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WORNICK COMPANY,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>TRANS-PACKERS SERVICES CORPORATION,<br><br>　　　　　　　　Defendant.<br>———————————————————————<br>TRANS-PACKERS SERVICES CORP.,<br><br>　　　　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>FRANKLIN FARMS EAST, INC.,<br><br>　　　　　　　　Third-Party Defendant. | CIVIL ACTION NO.<br>11-CV-03008 (FB)(CLP)<br><br>**AMENDED<br>THIRD-PARTY COMPLAINT** |

　　Defendant/Third-Party Plaintiff Trans-Packers Services Corp. ("Trans-Packers"), for its Amended Third-Party Complaint against Third-Party Defendant Franklin Farms East, Inc. ("Franklin"), by its attorneys, alleges as follows:

**PARTIES**

　　1.　　Trans-Packers is a New York corporation with its principal place of business located at 419 Vandervoort Avenue, Brooklyn, New York 11222.

　　2.　　Franklin is a New Jersey corporation with its principal place of business located at 111 West Washington Avenue, Washington, New Jersey 07882.

## JURISDICTION AND VENUE

3. This Court has subject jurisdiction over this third-party action pursuant to 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy, as described more fully below, exceeds the sum of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Franklin because Franklin regularly conducts business in New York.

5. This Court is a proper venue because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. 28 U.S.C. § 1391(b)(2).

## FACTS

6. Upon information and belief, non-party Plainview Milk Products Cooperative ("Plainview"), a Minnesota cooperative with its registered office located at 130 Second Street Southwest, Plainview, Minnesota 55964, is now, and was at all times relevant hereto, in the business, *inter alia,* of manufacturing and distributing a variety of milk products.

7. Upon information and belief, Plainview operates a bulk dry blending facility where, at all times relevant to this action, it manufactured a variety of products, including, but not limited to, instant non-fat dry milk ("NFDM"), whey protein, fruit stabilizers and gums (thickening agents).

8. Upon information and belief, Franklin is in the business of distributing a variety of food products, including, at all times relevant hereto, NFDM manufactured by Plainview.

9. At all times relevant hereto, from in or prior to June 2007 through in or about June 2009, Trans-Packers purchased certain quantities of NFDM manufactured by Plainview from Franklin.

10. In connection with such purchases, Franklin provided Trans-Packers with certificates which stated that the NFDM manufactured by Plainview was, among other things, *salmonella* negative. Trans-Packers relied on the certifications it received from Franklin which stated that the NFDM was *salmonella* negative.

11. Trans-Packers incorporated the NFDM it purchased from Franklin in its manufacture of Dairy Shake blends, a dehydrated powdered product used primarily by the United States military as part of its Meals Ready to Eat ("MRE") program.

12. At all times relevant hereto, Trans-Packers sold Dairy Shake blends directly to the United States Government (particularly to the Defense Supply Center Philadelphia, now known as DLA-Troop Support ["DLA"]) and, also, to three assembler customers, including Plaintiff The Wornick Company ("Wornick"), who in turn packaged the Dairy Shake blends with other products to form MREs for sale and delivery to DLA, and to two commercial customers.

13. On or about June 23, 2009, Plainview issued a voluntary recall ("Plainview Recall") of several products manufactured at its facilities during the period June 2007 through June 2009. The recalled products included NFDM.

14. On or about June 26, 2009, Franklin, by RECALL NOTICE dated June 25, 2009 ("Franklin Recall"), notified Trans-Packers of the Plainview Recall.

15. The Plainview Recall, albeit characterized as voluntary, was at the behest of the Federal Food and Drug Administration ("FDA") based upon a positive finding of *salmonella* contamination at Plainview's manufacturing facility, and the potential contamination of products manufactured at such facility, including NFDM.

16. As part of the Plainview Recall, Dairy Shake blends, among other products produced with NFDM manufactured by Plainview during the period June 2007 through June 2009, were recalled worldwide.

17. In consequence of the Plainview Recall, DLA, Trans-Packers' three assemblers, including Wornick, and its commercial customers asserted that Trans-Packers has a legal duty to compensate such customers for all of the damages incurred by such customers as a result of their purchase of Dairy Shakes affected by the Plainview Recall from Trans-Packers; and such customers asserted direct and/or indemnification claims against Trans-Packers, including this action. Two of its commercial customers also asserted direct claims against Trans-Packers.

18. On or about December 7, 2007, March 14, 2008 and April 8, 2008, Dairy Shake blends assembled at Trans-Packers' facility in Brooklyn, New York, tested positive, or presumptively positive, for *salmonella* (the "Prior Contaminations").

19. Upon the occurrence of each of the Prior Contaminations, Trans-Packers' facilities were tested for the presence of *salmonella;* and each of such tests was negative.

20. As a result of each of the Prior Contaminations, Trans-Packers was required to destroy inventory and shut down a significant portion of its operations for various periods, aggregating not less than 166 days.

21. Dairy Shake lot no. 9133, blended at Trans-Packers' facility on May 13, 2009, tested presumptively positive for *salmonella* on or about such date.

22. As a result of such presumptively positive *salmonella* test at Trans-Packers, Trans-Packers was required to suspend a portion of its operations while its facilities were exhaustively tested for the presence of *salmonella* by various governmental entities, including the FDA.

23. By reason of such partial suspension of its operations, Trans-Packers suffered a loss of use of its equipment involved in the manufacture of Dairy Shake blends and other products, and was required to incur, and incurred, additional costs in inspection and sanitization of its equipment.

24. At or about the time exhaustive tests of Trans-Packers' facilities proved negative for the presence of *salmonella,* the FDA expanded its investigation to the ingredient suppliers of the Dairy Shake blend.

25. During the period June 9, 2009 through July 15, 2009, representatives of the FDA and the Minnesota Department of Agriculture conducted thorough testing of the products and facilities of Plainview; and, upon information and belief, the majority of the numerous swabs taken during the aforesaid period of Plainview's environment and facility were positive for several contact and non-food contact surfaces and environmental areas.

26. Among the varieties of *salmonella* present at Plainview's facility was a Minnesota variety of *salmonella tennessee,* which was the same *salmonella* variant found in the Dairy Shake product at Trans-Packers' facility that tested presumptively positive for *salmonella* on or about May 13, 2009.

27. As a result of the discovery of the Minnesota variety of *salmonella tennessee* at and in both the Plainview facility in June-July 2009, and in certain of the Dairy Shake blends produced at Trans-Packers on May 13, 2009, the FDA concluded that the source of the *salmonella* contamination in Trans-Packers' Dairy Shakes was the NFDM produced at Plainview's facility.

28. Tests conducted by the United States Department of Agriculture in May 2009 revealed a similarity of 99.99% in the Minnesota variant of *salmonella tennessee* found in the Dairy Shakes at Trans-Packers on May 13, 2009 and the Minnesota variant of *salmonella*

*tennessee* in the Dairy Shake blends produced at Trans-Packers in March, 2008 -- one of the Prior Contaminations.

29. Upon information and belief, each of the Prior Contaminations was caused by contaminated NFDM manufactured by Plainview and sold to Trans-Packers by Franklin.

30. As a direct result of the Prior Contaminations, Trans-Packers incurred damages, in the form, *inter alia,* of lost inventory, loss of use of equipment, additional clean-up expenses and loss of goodwill, loss of future profits and harm to business reputation.

31. As a direct result of the Plainview Recall, Trans-Packers incurred or will incur damages consisting, *inter alia,* of lost inventory, loss of use of equipment, additional clean-up expenses, loss of goodwill, loss of future profits and harm to business reputation, as well as costs, expenses and liability from claims asserted against Trans-Packers by, among others, Wornick.

32. The damages incurred or to be incurred by Trans-Packers are directly caused by the Prior Contaminations and Plainview's Recall of its NFDM manufactured between and inclusive of the period 2007 through June 2009.

**COUNT I**
**INDEMNIFICATION**

33. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

34. While denying any liability for damages to Wornick, if Trans-Packers should be adjudged liable to Wornick, Trans-Packers asserts that any and all injuries and damages allegedly sustained by Wornick were the proximate result of the actions of Franklin. As such, Franklin is liable to Trans-Packers, by way indemnification, for any and all sums which it may be required to pay in this action, including attorneys' fees and expenses.

## COUNT II
## STRICT LIABILITY IN TORT

35. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

36. Franklin, as the distributor of the Plainview-manufactured NFDM, owed Trans-Packers a duty to exercise due care in the distribution of its products to ensure that such products were safe and otherwise fit for the intended uses of such products.

37. An expected and intended use of NFDM is as an ingredient in products meant for human consumption.

38. Franklin breached its duty by distributing NFDM that was, in the case of the Prior Contaminations, actually contaminated with *salmonella* and, in the case of the Plainview and Franklin Recalls, produced at a facility in which *salmonella* was present, resulting in a potential that such product was defective or unreasonably dangerous, rendering it unsafe, or potentially unsafe, for its normal, intended use.

39. The NFDM that Franklin distributed and sold was, at the time it left Franklin's actual or constructive control, actually or potentially defective and unreasonably dangerous for its ordinary and expected use because it actually or potentially contained *salmonella.*

40. The NFDM that Franklin distributed and sold was delivered to Trans-Packers without any change in its condition.

41. The NFDM that Franklin distributed and sold into interstate commerce was used in an expected and intended manner, i.e., inclusion in Dairy Shake blends.

42. Trans-Packers suffered damages as a direct and proximate result of the actual or potentially defective and unreasonably dangerous condition of the NFDM that Franklin distributed and sold, which damages included, *inter alia,* loss of goodwill, loss of customers,

loss of future profits, lost inventory, loss of use of equipment, additional clean-up expenses, as well as costs, expenses and liability in respect of claims asserted against Trans-Packers by, among others, Wornick.

43. As a result of this breach of duty owned to Trans-Packers, Franklin is strictly liable for the damages directly caused by distribution of Plainview-manufactured NFDM actually or potentially contaminated with *salmonella.*

## COUNT III
## NEW JERSEY PRODUCT LIABILITY ACT

44. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

45. The products affected by the Plainview Recall and the Franklin Recall are deemed to be "products" within the meaning of the New Jersey Product Liability Act, N.J.S.A. 2A:58C-2.

46. Franklin is strictly liable for any and all resulting damages.

47. Alternatively, Franklin owed a duty to Trans-Packers to ensure that the NFDM sold to Trans-Packers met all applicable standards.

48. Franklin negligently failed to insure that the NFDM sold to Trans-Packers satisfied all applicable health and safety statutes, regulations and/or other statutes.

49. The NFDM sold by Franklin to Trans-Packers caused harm within the meaning of the New Jersey Product Liability Act.

50. As a direct and proximate result of the defects in, or potentially in, the NFDM, and the consequent Plainview and Franklin Recalls, Trans-Packers suffered damages in an amount to be determined at trial, which damages included, *inter alia,* lost inventory, loss of use of equipment, additional clean-up expenses, loss of goodwill, loss of customers,

harm to business reputation, as well as costs, expenses and liability in respect of claims asserted against Trans-Packers by, among others, Wornick.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

51. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

52. Franklin is a merchant with respect to NFDM.

53. Franklin impliedly warranted that the NFDM provided to Trans-Packers was merchantable and free of defects, and fit for the ordinary purpose for which the NFDM was used.

54. Franklin had an obligation to provide NFDM that was merchantable and free of defects.

55. The Plainview-manufactured NFDM purchased by Trans-Packers from Franklin was neither merchantable nor free of defects in that, *inter alia,* the NFDM, as evidenced by (i) the Prior Contaminations, (ii) the Plainview Recall and (iii) the Franklin Recall, was unable to pass without objection as a food product in the food industry because it was, in the case of the Prior Contaminations, contaminated with *salmonella* and, in the case of the Plainview and Franklin Recalls, manufactured in a facility contaminated with *salmonella* and, thus, subject to a recall as a result of potential contamination with *salmonella.*

56. Franklin breached the implied warranty of merchantability by, in the case of the Prior Contaminations, selling and distributing NFDM contaminated with *salmonella* and, in the case of the Plainview and Franklin Recalls, selling and distributing NFDM manufactured in a facility contaminated with *salmonella* and, thus, subject to a recall as a result of potential contamination with *salmonella.*

57. As a direct and proximate result of Franklin's breaches of the implied warranty of merchantability, Trans-Packers has incurred or will incur damages, including lost

9

inventory, loss of use of equipment, additional clean-up expenses, loss of goodwill, loss of customers, loss of future profits, harm to business reputation, as well as costs, expenses and liability in respect of claims asserted against Trans-Packers by, among others, Wornick.

## COUNT V
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE BY FRANKLIN

58. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

59. Upon information and belief, Franklin is in the business of selling and distributing raw ingredients for the inclusion in processed foods for human consumption.

60. Trans-Packers is in the business, among other things, of manufacturing and processing multi-ingredient food products.

61. Trans-Packers relied on Franklin to furnish goods, namely, NFDM, suitable for inclusion in its processed foods, namely, Dairy Shake blends, and fit for human consumption.

62. Franklin impliedly warranted to Trans-Packers that the Plainview- manufactured NFDM would be fit for its intended purpose of human consumption.

63. Franklin breached the implied warranty of fitness for a particular purpose by selling and distributing NFDM that, in the case of the Prior Contaminations, was contaminated with *salmonella* and, in the case of the Plainview and Franklin Recalls, was subject to a recall as a result of its having been manufactured in a facility contaminated with *salmonella.*

64. As a direct and proximate result of Franklin's breaches of the implied warranty of fitness for a particular purpose; Trans-Packers has incurred or will incur damages, including lost inventory, loss of use of equipment, additional clean-up expenses, loss of goodwill, loss of customers, loss of future profits, harm to business reputation, as well as

costs, expenses and liability in respect of claims asserted against Trans-Packers by, among others, Wornick.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

65. Trans-Packers repeats and realleges each of the above paragraphs as if fully rewritten herein.

66. Franklin expressly warranted that the NFDM sold to Trans-Packers was *salmonella* negative.

67. Franklin's express warranty relating to the NFDM became part of the basis for the bargain between Franklin and Trans-Packers.

68. By reason of Franklin's sale and distribution of NFDM actually or potentially contaminated with *salmonella*, Franklin breached its express warranty to Trans-Packers.

69. As a direct and proximate result of Franklin's breaches of express warranty, Trans-Packers has incurred or will incur damages, including lost inventory, loss of use of equipment, additional clean-up expenses, loss of goodwill, loss of customers, loss of future profits, harm to business reputation, as well as costs, expenses and liability in respect of claims asserted against Trans-Packer by, among others, Wornick.

**WHEREFORE**, Trans-Packers prays for judgment of this Court as follows:

(A) On Count I, an order against Franklin indemnifying Trans-Packers for any costs, expenses and liability awarded to Wornick in the primary action;

(B) On Counts II through VI, an award of monetary damages against Franklin in an amount to be determined at trial;

(C) An award of reasonable attorneys' fees, costs and disbursements; and

(D) An award of such other and further relief as would be equitable and just under the circumstances.

Dated: April 7, 2014
     New York, New York

                    **DUANE MORRIS LLP**

                    BY:   /s/*Stephen Sussman*
                          Stephen Sussman (SS 1072)
                          Evangelos Michailidis (EM 3383)
                    1540 Broadway
                    New York, NY 10036-4086
                    Telephone: +1 212 692 1000
                    Fax: +1 212 692 1020
                    ssussman@duanemorris.com
                    emichailidis@duanemorris.com

                    *Attorneys for Trans-Packers Services Corp.*